And we'll hear from Ms. Blatt. Thank you. Have you ever been an appellant before? I have in a previous life, Your Honor, but in my AUSA life, this is my first blue brief, so it's nice to come back. May it please the Court and Counsel, Mara Blatt, for the United States as appellant in this matter. Fairly read, Supreme Court and Fifth Circuit precedent fully stand for the proposition that probable cause is not about certainty. It's about reasonable probability. The district court's decision to grant suppression in this case was an error because it did not follow that legal principle. Instead, it held the government to a higher standard of probable cause, which neither this court nor the Supreme Court has held to be applicable as a matter of law. And it did this in three ways. I'm just going to list them first and then circle back to discuss each separately. The first is that it required the government to establish an exclusive nexus between the dumpster and Moore, the defendant. Second, it did not recognize the corroborative effect of the trash run evidence itself. And third, by characterizing the affidavit as bare bones, it did not examine the totality of the circumstances as stated in the affidavit, in the reliable information contained in the affidavit, which further corroborated the trash runs. Are there any other reported cases where there was a trash container that wasn't just identified to one or two residences, but could have been receiving trash from several? Yes, there was. In Sibley, there was an apartment dumpster at issue there, where there was trash thrown into a dumpster that was communally shared. To go back to the exclusive nexus, though, which I think is a major problem in the district court's ruling. The district court stated in its order, and I'm quoting here, that since this trash receptacle was not located on defendant's property, nothing in the form of an exclusive link to the K-2 can be attributed to the defendant. And indeed- Also, let me ask you about that, because I wasn't quite necessarily following what Judge Smith was saying. My understanding of the affidavit, when they talk about a sealed bag, what the defiant is talking about is a normal trash bag, sealed or tied together. I don't know if I'd use the word sealed, it's confusing me a bit. Is that your understanding, what the affidavit is talking about, that this is a large trash bag, tied up, sealed in the word of the affidavit? And within that single bag, three different times, were the items identified in the affidavit? The spice, as well as some correspondence addressed to that residence. Yes, and the contraband. There are three separate sealed bags found on three separate occasions. Sealed bags are trash bags. Yes. Full of trash from presumably, maybe not probable cause, but that we're talking about. Yes. So the letters were in there, the drugs were in there, or the residue was in there from the drugs. Right. Okay. Correct. For the purpose of a search warrant, however, the nexus for probable cause is between the place to be searched and the items to be seized. Not the items that were seized and the defendant in his person. Moreover, that link need not be exclusive. There simply has to be support for the legal conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. The place to be searched. Your brief states that if all of this was loose in the dumpster, not in a single bag, that you would have a harder case to make. I'm not quite sure how you put it. It seems to me you would have an impossible case to make if you had a dumpster serving a large apartment complex full of everyone's trash and trying to link it in the way that you can when it's all in one trash bag. Do you actually believe the law would reach to the situation when it's all just loose inside an open dumpster? If those were the only facts that we had, that there was a dumpster and that it had contraband stuff and mail stuff in it, yes, I don't think that we could maintain it. There, again, and this is, I think, part of the problem with the totality of this. Part of the problem here is that it's a totality of the circumstances that one looks to. So there might be cases where there might be roaches and that's other evidence in the affidavit that could be used to prove probable cause. But standing alone, and I take that that was your question, standing alone, just roaches and garbage in a dumpster, no. One of the cases you've already cited and is in your brief is Sibley. Seems to me one of the things Judge Smith was concerned about, the district judge here, is that you didn't have any of the background in the affidavit, at least to the extent that Sibley does, about the investigation that led up to watching this particular dumpster and being present in Sibley case when bags were tossed in there. What about this? This is thin, the affidavit, in so far as explaining what was behind the law enforcement's interest in this particular location? I don't have the affidavit in front of me. If that's not the way you're remembering it, you can correct me. But I thought there was very little in the affidavit about why law enforcement was focused on these individuals, this residence, this dumpster. I don't think that's necessarily a requirement. Is that correct, the affidavit does not address the background of the investigation? I think there is an inference in the affidavit that there was, in fact, an investigation. The names of the parties, their birth dates, their genders, their sexes. I thought they picked up trash three times. Yes, they absolutely did pick up trash three times. Well, either they have an unnatural interest in trash or else they're looking for something in particular after the first time. Well, this defendant in the four corners of the affidavit is known to be a violent felon. Is known to be somebody who has been in possession of firearms. And yes, the affidavit doesn't contain any information, however, about why this investigation was instigated. Nevertheless, it obviously was. There was obviously information that was looked at, records that were checked. I mean, this is very, very specific information about these people. And once the trash runs are done, even the first one is done, there's reason to continue to see whether or not there is a link between this residence and criminal activity. Was this totally done on paper or was there a hearing on the suppression motion? You mean in the federal court? In the district court. In the district court. There was no hearing, no. Well, it looks to me as if Judge Walter Smith seems to think that, you know, that he doesn't seem to think that this evidence was found in a sealed black trash bag. I mean, what he's saying is that it's in a receptacle. Small quantities of K2 were found with mail addressed to defendant in the receptacle. This doesn't rise to probable cause. It is entirely plausible that a large trash receptacle would contain such items. But an exercise is speculation as to whom each individual item may belong. I did not read the district court. I thought that the district court's fact finding that it was, I'm sorry, let me go back a second. That it was not disputed that this trash was found in sealed bags that were then contained within the receptacle. Well, I'm just saying he doesn't refer to sealed bags in his two page opinion, two pages of analysis. Yes, but there's nothing in the briefing below that challenges that whole issue. There was no dispute about the fact that it was, that this evidence was found in sealed bags. Is it also undisputed or otherwise in the record that in each of those bags was not only the K2, but some evidence of mail addressed to the particular address and occupant? Yes, there was. And actually, I think it's at page 70 of the record, where the judge says that he found that the mail in the bags was actually addressed to Moore. If I may return, though, to the nexus issue and why the judge's legal analysis here is not correct. So I had first discussed that it's the relationship between the place searched and the evidence seized, which here would be the trash bags and the residents and Moore's residents. Also, the link need not be exclusive. There simply has to be support for the legal conclusion that there is a fair probability that contraband or evidence of crime will be found in a particular case. And those, for the same reasons, the government did not have to prove any link between the dumpster and the residents. Again, the focus should have been on the evidence seized, which was the bags of trash, sealed bags of trash on three separate occasions over a month, and the residents. It is reasonable to conclude from that evidence alone that there was, in fact, criminal activity going on in this residence. And that brings me to my second point, which is about the corroborative effect of the trash evidence itself. The district court expressed concern that this dumpster was available to many households and that it was speculative, Judge Jones, you actually read the language, about who the trash belonged to. But this court on several occasions has affirmed that sealed trash containing contraband and found in publicly accessible places can be used to establish probable cause. And indeed, the reverse side of this is that a defendant has no claim to a reasonable expectation of privacy in trash that they have put in a publicly accessible place. What's really important here, in terms of the corroborative effect of the trash run evidence, is that it's the number of times over a period of time over which the sealed bags are found in the same place, in the same dumpster, which is behind the Moore residence. And this corroborates the legal conclusion that there is a fair probability that there is crime going on there. And really importantly, I think, these repetitions also defeat the district court's inherent conclusion that public access made the evidence somehow unreliable and that the nexus, therefore, somehow suspect or speculative. Again, the standards that are applied here is we're not going to look at this evidence in terms of hyper technicalities. We're not going to look at this, we're going to take a common sense approach to the evidence here. And here, those repetitive trash runs demonstrate that it would have been improbable and could have been found in the same place, however, even if the trash run evidence is somehow insufficient, which is not the government's claim here, but even if it is, with regard to the totality of the circumstances, the district court again failed to apply that which is absolutely critical to any Fourth Amendment analysis. The affidavit contains a full address and description of the residence, but I'm going to jump to the most critical part, which is that it said that he had cameras on his property. And that would make, not only for the no-knock warrant, because this was also a no-knock, but it would also enable him to destroy any evidence that was in the house, were the house approached by law enforcement. And that is something which, again, gives rise to the inference that there is illegal activity going on in this house and that the affidavit itself is not bare bones. Of course, this court understands that ultimately the district court's determination that the facts provided probable cause is reviewed de novo. This affidavit supports the legal conclusion that officers would have been objectively reasonable and could have relied upon this warrant in good faith, and that issue is also subject to de novo review. And that even if good faith did not apply, a magistrate using his common sense and reasonable inferences from the affidavit would have been proper in finding that there was probable cause for the warrant to issue. The government therefore requests that this court reverse the decision of the district court and remand for further proceedings. Okay, thank you, Ms. Blatt. You have time for rebuttal. Mr. West? May it please the court, counsel, your honors. The district court correctly ruled that the good faith exception did not apply because the affidavit supporting the search warrant in question was bare bones, lacking in any indicia of probable cause. Additionally, the court correctly ruled that there was insufficient nexus, not a substantial basis to find that probable cause existed. Any reliance on such a warrant would be unreasonable, even from the objectively ascertainable reasonable officer. The government has wholly failed to prove that the court clearly erroneously made a, he messed up on the facts, that's the burden the government has, which they have not met. Well, counsel, Judge Jones earlier read the district judge's opinion, and it is a sense from the opinion that he may not have appreciated, understood that the contraband and the mail was in a larger bag, and it was not all loose in this receptacle, as he called it. He never talked about the intermediate container, the trash bag. He just talked about the receptacle and the evidence, as if it was all loose. I mean, isn't this Sibley? How do you distinguish the Sibley case? Your Honor, in Sibley there were two co-conspirators, as in this case there's two suspected parties listed in the affidavit. Well, we're not searching the two individuals, we're searching the residents. We need probable cause to believe that there was contraband as identified at the residence, no matter whose possession it was in. Is that stated as a statement? We turn it into a question, is that correct? Right, Your Honor. So it wasn't important to know which Moore had possession of drugs, it was important to show that within this residence is a probability, probable cause to believe that kind of contraband would be discovered. Yes, Your Honor. In Sibley, they had surveillance. They watched the co-conspirator take the bag and put it in the dumpster. They saw I had a witness, a maintenance man, not a confidential informant, but a maintenance man, who saw them dump another bag in another part of the complex, not in a trash can, that had marijuana in it. They had independent cooperation of what was going on. In this case, we have three trash runs. Number one, a bag that's placed back. We don't know who put it there. We don't know where it came from. We just know it was placed there. Isn't there a probability, though, from the letter that's in it, that it came from the place where that mail had been sent? That's where I was going, Your Honor. I'm sorry, what? There's three different types of items, identifiers, in the trash bags. The first run, which was over a month before the execution of the search warrant, was a box, and it says, mail to the suspected address. It doesn't identify anyone. That's in the affidavit. And the second and third, it said there was mail addressed to the resident. But it doesn't say which address. Didn't it say to one of the two, I don't know how to put it, to one of the suspects or to one of the, I mean, it did indicate that one of the two Moors was the addressee on the mail. Isn't that what the affidavit said? It says by a suspected party, yes, Your Honor. And those are identified in the affidavit or earlier as the two Moors. Yes, on the first page of the affidavit. And they're trying to establish a nexus between the residents and the drugs found in the trash. Ergo, a search warrant. Let's see what we find. The problem is, he identifies the suspected parties. His conclusion, conclusory statement, there's a suspected party. There's no evidence in the affidavit. Saying how he got there, where it came from. Same with the house. So there's a trash run. There's a trash run to start the deal. And he probably, I mean, he says it's these two people named Moore. And it wouldn't be hard to look up their address. That's what puzzles me, Your Honor, specifically about Rodriguez and Salves and Sibley. They, in the affidavit, he says, I did a utilities check. I did a car registration check to see that the car, who was it registered to? What home was it registered to? None of that occurred here. In this case, according to the detective, he says, oh, there's cameras. We can't watch. Well, on the day the warrant was executed, on page eight of the record in his affidavit, which supports the filing of the complaint in this matter against my client, Mr. Moore, he says we watched him. We watched him drive two blocks down the street. We watched him make a turn. The officer misled the judge, saying there's too many cameras. We can't do our job. We can't do a drive-by, an unmarked car, and write down the tag, and run the tag. I mean, I don't quite follow your point there, because it was clearly Moore's house. What would the point of referring to cameras in the affidavit was to justify a no-knock warrant? Well, that would suggest a no-knock warrant, but not add probable cause to what needs to be found. It's just a fact. How many people have cameras on them? I understand that. But cameras don't prevent the police from sitting outside and watching, which I thought you were trying to draw a connection. No, it doesn't prevent them from watching, doing surveillance. None of that's referenced in here. In Saul's and Sibley, they all talk about the extra things beside the trash run. In those cases, they talk about, well, we saw who took it. We know Mr. Moore lives there. He took it to the trash can. We ain't got that bad. That's why I believe the court is correct in saying it calls for speculation. The government once says, well, he didn't talk about totality. Well, in his order, on the last paragraph, he talks about there's no other corroboration, no surveillance. That's what he's looking at, the whole situation. Well, suppose it was a public trash bin in a park or something, and somebody tips off, some confidential informant tips off the police. And they go to the trash. And they open up a sealed plastic bag. And it has one of those bombs in it, like the ones that the Boston Marathon bombers use. And it just so happens to have some other piece of evidence that identifies the person who put this would-be bomb in there. Now, leave aside the peril to the public and all that. I'm not saying that. But wouldn't that be enough to search wherever that person's abode was? Well, Your Honor, I think part of it depends on what the confidential informant said. Were they corroborating? I'm willing to say that the confidential informant is completely irrelevant. But the fact is, it's in a public place. There's no expectation of privacy in trash or a bag that you plan in a public place. There's just none. So they have every right to go in and search every bit of trash that they want to search. Absolutely, searching the trash. Right. They have to establish the nexus between the person and the bomb. They did. The bag had, well, in the facts of this case, the bag had mail addressed to the Moors, which presumably had an address on it, in addition to the contraband. Well, those are facts that aren't in the record, Your Honor. Those are facts that are presumed or assumed. I thought the affidavit said there was mail in there. Said there was mail in there addressed to the suspected party. Right. It doesn't list. It's still under. There has to be some nexus, substantial nexus, between the house and the parties. Some of the cases used the suspect or defendant as part of the nexus to tie it all in together. We don't know how long that trash had been there. Trash bags, as you know, they're not vacuum sealed. They're just tied together. People could have opened them, put stuff in them. We don't know that. This house could have been a flip house. Someone goes in, they have to clean it out. It takes several weeks to clean it out. There's no witnesses, no identifiers, no CIs, no one, other than the conclusory statement. It's these guys. That's all there is.  And to the case of Brown, which was in the federal appendix it's cited in my brief, 567-272. It was a search warrant after a traffic stop. I mean, a search of a vehicle after a traffic violation. Proper, legal, done the right way. Well, the detective went and got a search warrant by uncooperative CI. He misled the court, investigated for drug offenses the suspect had been. There was no details in the investigation. In this case, there's no uncooperative CI. These are just conclusory statements from the officer. He says surveillance wasn't possible, yet it was. On page eight, it shows he clearly did so. There were no prior drug convictions listed in the affidavit. And there's no details of the investigation. They went through the trash. They thought that was enough. And I understand that probable cause could come from a trash run, if it's that specific. But based upon conclusory statements, as in Brown, considering the totality, the affidavit was insufficient to allow the magistrate to assess whether there were sufficient probable cause under the substantial basis test. Good faith exception doesn't apply. The affidavit is bare bones. The things about cameras, no knock, prior criminal history, which he doesn't say where he gets it. He just puts it in there, another conclusory statement. That's all for the no knock, inappropriate. The limited investigation, if there was one, was not discussed. He didn't give the magistrate an opportunity to evaluate whether there was sufficient probable cause. The facts are so bare that it would be unreasonable for an officer to act in good faith in this matter. If there's no further questions from the court, I'll yield the balance. I think we have your argument. Thank you very much. Ms. Blatt. Thank you, Your Honor. I'm just going to do this sort of in quick little bullet points here. The affidavit is absolutely clear that these bags were sealed. And at least at the district court level, they had to challenge that. If they didn't think that that was the case, then that needed to be challenged, and it was not. Omissions of fact cannot undermine the reliability of a warrant, I'm sorry, the validity of a warrant, unless those omissions are made intentionally. And that is not the claim here. There is no claim of that. This is just about bare bones. Finally, I mean, not finally, Sibley is not about the quantum of evidence that is necessary in any given or every given case. It's about the fact that in that particular case, there was enough for the totality of the circumstances. Not going to claim that this is the best affidavit that has ever been sworn out. On the other hand, under the legal precedents of this court, it was sufficient. Well, what were they going after on this fellow? I mean, because you find the joints or whatever, right? And so it didn't say we suspect there's drugs. We just suspect there's illegal activity, right? And that's all that has to be stated. I understand. So then they can just rush into his house and they might have found hard disks with child porn or something, huh? Certainly that could be the case. Once a felon, always a felon. But in this case, there is evidence that there was contraband in this house. And that evidence came in the main from the trash runs. And it was not manufacture or distribution. It was obviously possession for individual use. It's hard to tell what it is. Because I mean, this search warrant was executed by the state. I mean, we don't know what amounts. There was a lot of money found in that house, $9,000, I think, hidden. So we don't really know what happened on the drug side of it. We only know that the case got referred to us and we prosecuted him as a felon in possession. So I can't really speak to that part of it. Also, a suspected party, oh, I'm sorry. If we look at the Rodriguez case at footnote four, there's a really interesting footnote in which I think the court is looking at an issue that is very similar to this one. In that case, the court said, we conclude that the good faith exception implies and we don't need to decide whether the drug-related evidence discovered in the trash can outside Rodriguez's residence, standing alone, suffices to establish probable cause. And the court goes on to characterize Saul's case, which we also cite, that that only had two facts. One is the finding of the contraband and the second was that the defendant had been involved in a previous drug charge. So I think the question may still be open, but I don't think this court needs to, again, answer the final question about whether or not this standing alone would be enough. But in this case, it is because it's not a single event. It's not a single trash bag. It's over time, it's consistent, and it's in the same place. And then finally- I'm just wondering, make sure I understand what you're saying about that footnote. What is it that you say we do not need yet to decide? Well, in this case, they were saying that they didn't need to yet decide- This case, meaning Rodriguez or- Rodriguez, I'm sorry, in Rodriguez. But Rodriguez was a case where there was just one trash bag found. It is the government's contention here that the trash run evidence in the toto altogether, because of the number of times, the consistency of it, the place where it was found, and over a month's period, different sealed bags, same stuff, properly established that probable cause for the search warrant. But nevertheless, there's also additional information in the affidavit that this court could rely upon in tandem with that evidence. And finally, just a quick word about suspected parties. Under Texas law, that's a term of art. There's a part of our brief where we discuss that. But really, that's what links the party. That's what empowers the party to have, in a legal way, that they have a reasonable expectation of privacy in that property. And so, in a state warrant, that has legal effect. Sorry. And finally, the information that Mr. West discussed was that on the day of the search, what happened on the day of the search? What happened is that your red light's on, so you better make it pretty quick. I'm going to. That's from an affidavit that's from the Federal Arrest Warrant. It's not part of this case. It's not within the four corners of this case. Thank you. Thank you.